O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| JOSE SOLIZ § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION L-04-33 |
| § | |
| THE CITY OF LAREDO, § | |
| § | |
| Defendant. § | |

## MEMORANDUM & ORDER

Defendant City of Laredo has filed a Motion for Summary Judgment. (Docket No. 19.)  Plaintiff Jose Soliz has responded, and Defendant has replied to that response.  (Docket Nos. 23 & 24.)

## Factual Background

As required in considering a summary judgment motion, the Court will view all facts and inferences in the light most favorable to the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  All factual controversies are resolved in the nonmoving party's favor.  *Id*.

Plaintiff Jose Soliz claims that he was unlawfully terminated from the Laredo Police Department (LPD) in October 2003, because of his membership in Laredo Fraternal Order of Police, Lodge 911 (FOP).  Soliz brings claims against the City of

1

Laredo (City) under the Texas Right to Work Act and under § 1983 for violation of his First Amendment right to freedom of association.

Soliz attended the Laredo Police Academy from August 19, 2002 until December 6, 2002. Shortly after graduating from the Academy, he joined the Laredo Police Officers Association (LPOA), the exclusive collective bargaining agent for the City. In August 2003, he left LPOA and became a member of FOP. FOP is a labor union of police officers employed by the City, which was formed in November 2002. Also in August 2003, Soliz obtained an off-duty job at Joe Brand, a local retail clothing store. It is not entirely clear what the job involved, other than repairing the store's security cameras. Subsequently, an anonymous complaint was filed with Internal Affairs against Soliz for holding an off-duty job as a probationary police officer without appropriate permission. As part of the investigation, Soliz attended an Internal Affairs interview on October 20, 2003 and told the investigators that he believed he was being singled out because he was a member of FOP. On October 31, 2003, Soliz was called to the Police Chief's office and received a letter from Chief Agustin Dovalina informing him of his termination. The letter does not state the reason for his termination. (Docket No. 19, Ex. 6-3.)

### First Amendment Claim

The First Amendment protects a public employee's right to associate with a union. *Hitt v. Connell*, 301 F.3d 240, 245 (5th Cir. 2002). State action designed to retaliate against public employees from joining a union or from taking an active part in its affairs violates that right. *Id*. at 245-46.

To prevail on a First Amendment retaliation claim, a plaintiff must show: (1) an adverse employment action, (2) his interest in "associating" outweighed the employer's interest in efficiency, and (3) his protected activity motivated the adverse employment action. *Id*. at 246. The burden then shifts to the employer to show by a preponderance of the evidence that it would have come to the same conclusion in the absence of the protected conduct. *Alexander v. Eads*, 392 F.3d 138, 142 (5th Cir. 2004). Finally, summary judgment should be used "most sparingly" in First Amendment cases, where "delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities" are involved. *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001) (internal alterations and quotations omitted).

The key issue is whether Soliz's termination was motivated by his association with FOP. The City argues that there is no direct or circumstantial evidence that Chief Dovalina harbored

animus against FOP or its members.  Soliz establishes that Chief Dovalina actively participated in LPOA's affairs before becoming Chief, and that his friends and relatives have leadership roles in LPOA.  (Docket No. 19, Ex. 6 at 14-15.)  Soliz openly displayed a FOP pin on his uniform and maintains that Chief Dovalina knew of his FOP membership.  While Dovalina denies knowing Soliz's union affiliation at the time that he fired him, he admits that it may have been brought to his attention, although he was not sure.[1]  The City suggests that Dovalina's testimony referred to a non-LPOA association, but not necessarily the FOP.  However, the evidence indicates that the LPD is

---

[1] Chief Dovalina's deposition states:
```
Q    That's the termination letter you wrote to
     Officer Soliz, correct?
A    That's correct.
Q    Can I take it that you, at the time-well, did
     you know what Officer Soliz's affiliation was?
     What labor organization that he belonged to?
Q    Was it ever brought to your attention by
     anyone, prior to the time you fired Officer
     Soliz, that he was a member of an employee
     organization other than the [LPOA]?
A    It may have been.  I can't really recall.  It
     didn't play any part in my decision to
     terminate him.
Q    Well, I understand that.  But you're saying
     that you were aware of that fact?
A    Like I said, it may have been brought to my
     attention.  I can't recall.
Q    Who might have brought it to your attention?
A    It may have been during the course of regular
     conversation that I was made aware that this
     individual belonged to this organization.
     (Docket No. 19, Ex. 6 at 18.)
```

4

relatively small, and there is no evidence of any third association in existence.  Enedina Martinez's deposition indicates that the LPD employs 400 officers.  (Docket No. 19, Ex. 3 at 37.)

In addition, Soliz asserts that he was terminated because Enedina Martinez, a board member of LPOA, filed an anonymous complaint against him for holding an off-duty job during his probationary status.  Soliz avers in his affidavit that when Martinez discovered him at his off-duty job at the mall in August 2003, she asked him whether he was supposed to be working because he was a probationary officer, to which Soliz responded that he had permission from his "supervisory Sergeant."  Martinez also asked him whether he had gone over to the other "clica," which Soliz understood to mean FOP.  An investigation of Soliz commenced one week later.  (Docket No. 23, Ex. 1 ¶¶ 24-31.)

One week before Soliz was fired, he had another encounter with Martinez at a City repair shop in mid-October 2003. Martinez told Soliz that he was "out of uniform," pointing to the FOP pin on his police uniform.  In the same conversation, Martinez told Soliz that one of the members of his academy class would be fired for having an off-duty job, which he immediately understood to refer to him.  (Docket No. 23, Ex. 1 ¶¶ 39-45.) Soliz also avers that Internal Affairs investigations are

supposed to maintain confidentiality under LPD "custom and policy"; that the officers who investigated the allegations of misconduct against him are all members of LPOA; and that one of the investigators, Lydia Chavez, is Martinez's close friend. There is no direct evidence that Martinez recommended or participated in the decision to terminate Soliz.[2] However, analyzing the evidence most favorably for the Plaintiff, one could conclude that Martinez prompted the investigation against Soliz, because of her awareness of Soliz's membership in FOP, her partisan zeal for LPOA, and her unexplained inside knowledge that Soliz would be terminated shortly. The addition of Chief Dovalina's close ties to LPOA and knowledge of Soliz's FOP membership circumstantially suggest an ulterior motive to terminate Soliz.[3]

The burden then shifts to the City to show by a

---

[2] *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 223 (5th Cir. 2001) (comments of supervisor who participated in investigation of incident leading to plaintiff's termination were not probative of improper motive, where there was no evidence that supervisor recommended termination or otherwise participated in the decision to terminate plaintiff).

[3] The foregoing analysis somewhat relies on Soliz's statement in his affidavit that he began his employment at Joe Brand in August 2003, and that the other developments followed soon thereafter. However, in his deposition, Soliz states that he did not work at Joe Brand until October 2003. (Doc. No. 19, Ex. 5 at 15.) Nothing else in the record corroborates either date. The confusion in the record over the sequence of events contributes to the Court's conclusion that the case currently is not ripe for summary judgment.

6

preponderance of the evidence a nondiscriminatory reason for terminating Soliz. The City asserts it terminated Soliz because he worked an off-duty job during his probationary period, in violation of the City Policy and Operations Manual.

Soliz unquestionably held an off-duty job of some kind at Joe Brand, which began in mid-August of 2003, during his one-year probationary period.[4] However, he offers two reasons why the City's reason for his termination is pretextual. According to Soliz's affidavit, he received permission to work the off-duty job from his supervisor, Sergeant John Payle, before he began working at Joe Brand.[5] (Docket No. 23, Ex. 1 ¶ 3). The City responds that Soliz did not request permission through the entire chain-of-command, in violation of the City of Laredo Policy and

---

[4] The City asserts in its Motion for Summary Judgment that Soliz was terminated for working "at least two outside jobs at clothing stores installing or maintaining surveillance equipment without permission from the LPD." (Docket No. 19 at 2.) Although Soliz admits in his deposition that he also worked at Stein Mart, a retail clothing store, while he was in the Laredo Police Academy (Docket No. 19, Ex. 5 at 7-8) and "during the first and second quarters of 2003" (Docket No. 19, Ex. 5 at 18), Police Chief Dovalina's stated reason for the termination is unclear. He merely indicates that Soliz was terminated for working "an off-duty job," but fails to remember what kind of job it was. He also "think[s] there were a number of off-duty jobs that [Soliz] had held during the time that he was under [LPD's] employ." (Docket No. 19, Ex. 6 at 6.) The City's investigative file on Soliz is not in the record.

[5] The City has moved to strike this testimony, asserting that it is a "mischaracterization," a "sham fact," and contradictory to Soliz's deposition testimony, but offers no explanation for these assertions.

Operations Manual.

The Manual is not in evidence, but according to the City, it states: "Upon approval by the supervisor, the request is forwarded through the chain of command requiring approval at each level, ending with the Chief of Police or his designate." However, that language is unclear as to who bears the responsibility of forwarding the request through the chain-of-command. The quoted language could easily be read to place the burden on the supervisor. It is also unclear to what extent Soliz was aware of the City's policy when he began working at Joe Brand. Soliz maintains that he was never told about the prohibition against off-duty employment. (Docket No. 19, Ex. 5 at 6-7, 10.)

Moreover, Soliz appears to have obtained approval at several levels, albeit after he began his employment at Joe Brand. The record contains an "Off-duty Employment Form," signed by Soliz, Payle, Command Captain Gabriel E. Martinez, and Assistant Chief Gilbert Navarro, dated September 30, 2003, a full month before he was terminated. (Docket No. 19, Exs. 6-1 & 6 at 10-11.) Soliz attests that he received a copy of this form two or three days after he turned it in on September 30, and believed that his request had been approved. (Docket No. 19, Ex. 5 at 17-18.) It is unclear whether anyone advised Soliz that he was violating

policy even as the approvals were being granted.  He also attests that after his Internal Affairs interview he received a second copy of the signed form, and was told that the permission to work off-duty was denied.[6]  The unexplained denial of approval and termination of employment, after Soliz had received permission from his own supervisor in August and had apparently received written approval by other superiors in September raises at least a question of whether the City's stated reason for the termination was pretextual.

Soliz also attempts to show that two other probationary police officers, Armando Hernandez and John Morales, who are members of LPOA, were treated differently from him, although they also each worked an off-duty job during their probationary periods.  He also says that he informed Internal Affairs of this during his investigative interview, but that to this date they are still employed at LPD.  (Docket No. 23, Ex. 1 ¶¶ 56-58).

Disparate treatment evidence is relevant only if the employee outside plaintiff's protected class is "similarly situated" to plaintiff.  *See Wallace v. Methodist Hosp. Sys.*, 271

---

[6] The second copy Soliz received is presumably the one indicating, next to the Assistant Chief's signature, "Cancelled/denied due to requesting officer's probationary status." (Docket No. 19, Ex. 5 at 17-18 & Ex. 6-2.)  Except for this notation, it appears to be a duplicate of the first copy he received. (Docket No. 19, Ex. 6-1.)  The Court cannot find in the record any explanation for the differences in the two approval forms.

F.3d 212, 221-222 (5th Cir. 2001).  With respect to Armando Hernandez, Jr., Soliz fails to show a violation.  Indeed, in his deposition, he expresses the belief that Hernandez did have proper approval.  (Docket No. 19, Ex. 5 at 24.)

With respect to Juan Morales, Soliz admits that Morales had probationary status under a different police chief, J.L. Martinez.[7]  (Docket No. 19, Ex. 5 at 25-26.)  *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) (finding that where decision-makers who disciplined plaintiff differed from those charged with deciding what action to take against plaintiff's co-worker, plaintiff and his co-worker were not similarly-situated).  Thus, he and Morales are not similarly situated.

## Texas Right to Work Act

The Texas Right to Work Act provides that "[a] person may not be denied employment based on membership or nonmembership in a labor union."  TEX. LAB. CODE ANN. § 101.052 (Vernon 2005).  The City argues that under *Gonzales v. Levy Strauss & Co.,* a plaintiff may not establish a claim under the Act based on a showing of selective enforcement.  *See* 70 S.W.3d 278 (Tex. Ct.

---

[7] The City does not affirmatively establish that Morales's probationary period was under a different police chief, but the record indicates that it lasted from March 1992 to March 1993. (Docket No. 19, Ex. 4 at 5.)

App.–San Antonio 2002).  However, Soliz does not rely solely on a theory of selective enforcement.  Because this claim is essentially based on the same facts underlying the First Amendment claim, already discussed, Soliz has presented sufficient evidence to withstand summary judgment.

## Conclusion

For all the foregoing reasons, the motion for summary judgment is DENIED.  The parties shall confer forthwith and either submit a final joint pretrial order or, if any other issues remain pending, submit a proposed amended scheduling order.  They shall respond by August 22, 2005.

DONE at Laredo, Texas, this 4th day of August, 2005.

_____
George P. Kazen
United States District Judge